RECEIVED
USDC, CLERK, CHARLESTON, SC
2008 MAY 27 P 2: 54

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Johnny Wayne Smith, ) | C.A. No. 2:07-2911-HFF-RSC |
| Plaintiff, ) | |
| -versus- ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, ) Commissioner of Social ) Security, ) | |
| Defendant. ) | |

This case is before the court pursuant to Local Rule 83.VII.02, D.S.C., concerning the disposition of Social Security cases in this District.

The plaintiff, Johnny Wayne Smith, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying the plaintiff's claims for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits on July 3, 2003, alleging that he became disabled on April 1, 2001, due to multiple sclerosis, vasovagal syndrome, and hypertension. The application was denied initially and on reconsideration by the Social Security Administration. The plaintiff filed a request for a hearing on March 3, 2005. The administrative law judge before whom the plaintiff appeared with counsel (Tr. 266-289), considered the case de novo, and on

January 25, 2007, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. (Tr. 12-19). The administrative law judge's opinion became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on June 28, 2007.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the administrative law judge:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b)).
>
> 3. The claimant has the following severe impairments: arrhythmia treated with a pacemaker and medications (20 CFR 404.1520(c)). ...
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). ...
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to occasionally lift or carry up to 50 pounds and frequently lift or carry up to 25 pounds; he cannot perform jobs that require balancing or climbing of ladders or scaffolds; and he must avoid hazards such as unprotected heights and operation of dangerous machinery. ...
>
> 6. The claimant is capable of performing past relevant work as an automobile mechanic, as it is generally performed in the national economy. See DOT § 620.261-010. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). ...

> 7. The claimant has not been under a "disability," as defined in the Social Security Act, from April 1, 2001, through the date of this decision (20 CFR 404.1520(f)).

Tr. 14-19.

## APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an impairment contained in the Social Security Act listings of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial

evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Secretary's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

In short the only issue before the Court is whether the final decision of the Commissioner is supported by substantial evidence and proper legal standards have been applied.

## ISSUES PRESENTED

The plaintiff asserts that 1) the administrative law judge failed to accord proper weight to the opinion of Plaintiff's treating physician, Dr. Villareal, and 2) the administrative law judge failed to properly evaluate whether the plaintiff could return to his past relevant work as an automotive mechanic.

## DISCUSSION

A review of the record and relevant case law reveals the administrative law judge's decision is supported by substantial evidence and should be upheld.

4

## TREATING PHYSICIAN RULE

The plaintiff first argues that the administrative law judge erred in rejecting the opinion of the plaintiff's treating physician, Dr. Villareal.

The Fourth Circuit Court of Appeals has held that "the opinion of a claimant's treating physician must be given great weight." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Such opinion is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.

While the Commissioner is not bound by the opinion of a claimant's treating physician, it may be disregarded only if there is persuasive contradictory evidence. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). Yet the court of appeals has also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record. Kyle v. Cohen, 449 F.2d 489, 492 (4th Cir. 1971). Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

The administrative law judge's decision that there was no objective basis to support Dr. Villareal's medical opinion of the plaintiff's functional limitations and that therefore his opinions were entitled to very little weight is supported by substantial evidence and should be affirmed. The administrative law judge gave persuasive weight to the contradictory medical

5

opinions of Dr. Robert W. Hull of Arrhythmia Consultants, P.A., who was a non-treating physician at the time of the hearing, and physicians assistant, Ken Murphy of Piedmont Cardiology Associates, P.A.

The plaintiff has a history of malignant vasovagal syncope, and underwent pacemaker implantation in August 1996, which enabled him to return to work as an automobile mechanic. (Tr. 176). In a "To Whom It May Concern" letter to Plaintiff's employer Greenwood Forklift dated February 19, 2003, Dr. Hull noted that he had cared for the plaintiff since 1996, when the plaintiff required a pacemaker implantation for a "non-threatening illness." (Tr. 173). Dr. Hull also wrote: "At this point [2003] the patient should be able to participate in any and all job related activities including quite heavy or strenuous activity." (Tr. 173).

Dr. Villareal of Piedmont Cardiology Associates, P.A., was the treating physician at the time of the administrative hearing in 2006. (Tr. 173). Plaintiff began seeing Dr. Villareal in April 2004. Dr Villareal diagnosed "recurrent presyncope in the setting of known vasovagal/neurocardiogenic syncope, possibly due to suboptimal programming" of Plaintiff's pacemaker. (Tr. 206). Dr. Villareal reprogrammed the pacemaker at that time. (Tr. 206). Subsequently, Dr. Villareal replaced the plaintiff's pacemaker on July 14, 2004. (Tr. 182). In a "To Whom It May Concern" letter dated December 3, 2004, Dr. Villareal wrote that the plaintiff suffered from malignant cardiogenic syncope, which is "characterized by unpredictable spells of dizziness,

lightheadedness, near passing out spells as well as passing out spells that can severely limit his ability to function." (Tr. 198). Dr. Villareal placed no exertional limitation on the plaintiff's functional capacity.

While under the care of Dr. Villareal, the plaintiff was also treated by physicians assistant, Murphy. (Tr. 230-231). On January 11, 2006, the plaintiff complained of intermittent dizziness that usually occurred two to three times per week and denied any syncope. (Tr. 230). Murphy noted that the plaintiff was at low-to-moderate risk for a cardiac event. (Tr. 231). At a follow-up visit with Murphy on April 11, 2006, the plaintiff reported that he experienced lightheadedness with positional changes for a couple of seconds. (Tr. 251). Murphy noted that the plaintiff's examination was essentially unremarkable with a regular heart rate and rhythm. (Tr. 251).

The objective medical evidence supports the opinions of Dr. Hull and physicians assistant Murphy. After the plaintiff's pacemaker was replaced, treatment notes from Dr. Villareal revealed no problems, and indicated that the plaintiff was only temporarily disabled. (Tr. 200-201). The record does not indicate that the plaintiff sought any medical treatment for his syncope during 2005. Additionally, as late as January 2006, the plaintiff denied any syncope. (Tr. 230). Under these circumstances, the administrative law judge did not err in his decision to give very little weight to the 2004 disability opinion of treating physician Dr. Villareal because "progress notes prior to and subsequent to the date of Dr. Villareal's

7

letter as well as other evidence of record do not show frequent or ongoing symptoms as could be interpreted by Dr. Villareal's comment that the claimant's symptoms 'severely limit his ability to function.'" (Tr. 17).

## PAST RELEVANT WORK

The plaintiff next argues that the administrative law judge erred in not properly evaluating whether the plaintiff could return to his past relevant work as an auto mechanic.

Social Security Ruling 82-62 sets forth in detail what is required of an administrative law judge to make a finding that a claimant can return to past relevant work activity. In part, SSR 82-62 states:

> Determination of the claimant's ability to do past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as it is generally performed in the economy. The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has farreaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

In short, SSR 82-62 requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work.

The administrative law judge gave controlling weight to Dr.

8

Hull's 2003 assessment of Plaintiff's ability to "participate in . . . quite heavy or strenuous activity," (Tr. 173) and concluded that the plaintiff has the residual functional capacity to perform medium work.(Tr. 18). Medium work involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c). The administrative law judge also found that the plaintiff cannot perform jobs that require balancing or climbing ladders or scaffolds, and he must avoids hazards such as unprotected heights and operation of dangerous machinery. (Tr. 18).

In comparing the plaintiff's residual functional capacity to the physical and mental demands of his past relevant job as an automotive mechanic, the administrative law judge found that plaintiff could perform that job as generally performed in the national economy. (Tr. 19). In his comparison the administrative law judge considered both the Dictionary of Occupational Titles #620.261.010 which describes automotive mechanic as medium work and the plaintiff's testimony at trial about the requirements of his particular work as an automotive mechanic. (Tr. 19).

Although Dr. Villareal indicated the plaintiff's impairments limit his ability to work, Plaintiff testified that his impairment does not limit his ability to function. (Tr. 278). Notably, the plaintiff testified that his impairment is not "bad enough to prevent him from driving," and he gets a "tingly feeling in [his] body" as a warning that he is going to have

9

dizziness or lightheadedness. (Tr. 277-278). Plaintiff also testified that the warning prevents him from being injured. (Tr. 278).

The record reflects, the plaintiff did not seek any medical treatment for his syncope in 2005 and denied any syncope as late as January, 2006. (Tr. 230). Moreover, the February 19, 2003, letter written by Dr. Hull and the plaintiff's testimony that his impairment does not limit his ability to drive supports the decision of the administrative law judge. Based on the above definition of medium work, and considering the plaintiff's self described limitations, it appears that there is substantial evidence to support the conclusion that an individual such as the plaintiff is capable of performing the job of an automotive mechanic. Under these circumstances, the decision of the administrative law judge should be affirmed.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that pursuant to the power of this court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), the Commissioner's decision be affirmed.

Respectfully submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina,
May 27, 2008

10